# United States District Court
## Northern District of Indiana

DOLEN GLENN,                )
                                     )
           Plaintiff,      )
                                     )     Civil Action No. 3:14-CV-521 JVB
           vs.              )
                                     )
WILLIAM WILSON , *et al.,*     )
                                     )
           Defendants.    )

## OPINION AND ORDER

Dolen Glenn, a *pro se* prisoner, filed an amended complaint under 42 U.S.C. § 1983. (DE 15.) The court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To survive dismissal, the complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 603. Thus, the plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Nevertheless, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

This is Glenn's third attempt to assert his claims. (*See* DE 2, 6, 12.) In the present complaint, Glenn alleges that he is an adherent of the Eastern Orthodox faith. He is currently housed at Wabash Valley Correctional Facility ("Wabash Valley"). This lawsuit stems from

events occurring in 2011 and 2012 when Glenn was housed at Indiana State Prison ("ISP").

Glenn alleges that in December 2011, he was removed from the religious services count letter and placed in disciplinary segregation by Don McBride, the assistant superintendent at ISP, after being accused of misconduct in connection with his inmate trust account.[1] During his time in segregation, he was not able to go to church services or "receive Eucharist sacrament and confession." In June 2012, McBride authorized Glenn's release from segregation. The following month he was transferred to Wabash Valley, which does not have Eastern Orthodox services.

Glenn claims he has been unable to practice his religion at Wabash Valley. Based on these events, he sues McBride and William Wilson, the superintendent at ISP, arguing that they violated his rights in removing him from the count letter and transferring him to another facility.

He seeks monetary damages and injunctive relief related to his religious practice.

Prisoners enjoy a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, restrictions that limit the exercise of religion are permissible if they are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Inmates are entitled to broader religious protection under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which provides in pertinent part:

---

[1] Glenn makes multiple references to a habeas case he filed under 28 U.S.C. § 2254. (DE 12 at 5, 7.) In that case, Glenn challenged a disciplinary proceeding in which he was found guilty of trafficking in connection with the incident involving his trust account. *See Glenn v. Superintendent*, No. 3:12-CV-208 (N.D. Ind. filed Apr. 18, 2012.) The Indiana Department of Correction later decided to vacate the disciplinary sanction, and Glenn's habeas petition was dismissed as moot. *Id.*, DE 39.

> No government shall impose . . . a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). However, RLUIPA does not authorize an award of money damages against state officials; rather, an inmate may only obtain injunctive relief under RLUIPA. *Sossamon v. Texas*, 131 S. Ct. 1651, 1658-59 (2011); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009).

Here, Glenn's claim is centered around his removal from the religious services count letter in December 2011. However, it is apparent from the complaint that Glenn was unable to attend religious services because of his placement in segregation. Inmates in segregation are permissibly subjected to far more restrictive conditions than those in general population, including being precluded from prison activities, religious services, contact visits, exercise privileges, and regulation of personal items they are allowed to have in their cell. *Lekas v. Briley,* 405 F.3d 602, 610-12 (7th Cir. 2005). Glenn's allegations that he was temporarily denied a privilege he would have received had he remained in the general population does not state a plausible claim for relief.

Glenn also appears to complain that Roman Catholic prisoners in segregation fared better than he did, because there was a Roman Catholic priest on staff who could visit their cells, whereas there was no Eastern Orthodox priest on staff. However, "[p]risons need not provide every religious sect or group within a prison with identical facilities or personnel and need not employ chaplains representing every faith among the inmate population." *Maddox v. Love,* 655 F.3d 709, 718 (7th Cir. 2011). Thus, "a plaintiff doesn't state a cause of action under the First

Amendment merely because a prison allocates a disproportionately smaller amount of its religious budget to certain sects or provides clergy for one religion and not another." *Id.* at 719.

Even if Glenn could adequately state a claim based on his removal from the count letter, a claim pertaining to events occurring in December 2011 would be time-barred. Glenn knew as of December 2011 he was being precluded from services, and under the applicable statute of limitations he was required to bring his claim within two years. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). His original complaint was tendered for mailing on February 27, 2014, which was beyond the two-year deadline. (DE 1 at 7.) Although the statute of limitations is an affirmative defense, dismissal at the pleading stage is appropriate when the plaintiff includes facts "sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674 (7th Cir. 2009). That standard is met here.

Glenn also complains about his transfer to Wabash Valley in July 2012; specifically, he preferred to stay at ISP so he could continue to attend Eastern Orthodox services. This claim would not be time-barred, but his allegations do not give rise to an actionable constitutional claim. Prison officials have authority to house an inmate in any correctional facility they deem appropriate, and an inmate has no constitutional right to be housed in a particular correctional facility or in the facility of his choosing. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Lekas*, 405 F.3d at 609 ("[A] prisoner may be transferred from one state prison to another without implicating the inmate's liberty interest—even where the conditions of the destination prison are 'much more disagreeable' than those of the originating prison.").

Glenn may have a claim regarding his ongoing ability to practice his religion at Wabash Valley. However, the present complaint is only brought against two ISP defendants, and Glenn cannot sue prison officials at ISP regarding his inability to exercise his religion at Wabash Valley. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred."). Furthermore, the appropriate place to bring such a claim would be the U.S. District Court for the Southern District of Indiana, since that is where Wabash Valley is located. *See* 28 U.S.C. § 1391(b). This opinion does not purport to adjudicate any claim Glenn may have regarding the conditions of his confinement at Wabash Valley. He is free to pursue this claim in the Southern District if he chooses, subject to the constraints of the Prison Litigation Reform Act, although the court offers no opinion about the merits of any potential claim he may have.

As a final matter, Glenn sent the court two letters in which he appears to request the appointment of counsel. (DE 10, 11.) He does not include any argument as to why counsel is needed, and instead simply lists attorneys he contacted about taking his case, apparently without success. Unlike criminal defendants, indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992). Nevertheless, the court may in its discretion recruit *pro bono* counsel under 28 U.S.C. § 1915 when the circumstances warrant it. In assessing a request for *pro bono* counsel under 28 U.S.C. § 1915, the court must make the following two inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing

so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc).

Assuming Glenn could satisfy the first prong, the court would find the recruitment of *pro bono* counsel unnecessary. Glenn's filings reflect that he is fully literate and capable of articulating himself to the court. There is no indication he required the assistance of an attorney to complete the complaint form that was sent to him. Although he might have preferred to proceed with counsel, the court cannot appoint counsel for this reason alone. *See Pruitt*, 503 F.3d at 655; *see also Olson v. Morgan,* —F.3d—, 2014 WL 1687802, at *2 (7th Cir. Apr. 30, 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most.").

Nor is there any indication that an attorney would have made a difference in the outcome of this case. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (denial of request for *pro bono* counsel will be improper only if there is "a reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation."). Glenn's allegations were clearly pled; they were simply time-barred or failed to give rise to an actionable constitutional claim. To the extent Glenn has a viable claim regarding the practice of his religion at his current facility, this opinion does not prejudice his ability to pursue that claim. Accordingly, his request for counsel will be denied.

For these reasons, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915A. The plaintiff's motions for appointment of counsel (DE 10, 11) are **DENIED**.

**SO ORDERED** on June 10, 2014.

  s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division